Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| ASTRID MARI FIGUEROA SANTIAGO<br><br>Apelada<br><br>v.<br><br>ALEX DAVID OLMEDA IRIZARRY<br><br>Apelante | TA2026AP00021 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Sobre: Alimentos<br><br>Caso Núm. GB2024RF00074 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de abril de 2026.

Comparece ante nos él apelante, Alex David Olmedo Lizardi (en adelante, apelante), y nos solicita la revisión de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Bayamón, el 13 de noviembre de 2025, notificada al día siguiente. Mediante esta, el Foro Primario desestimó la solicitud de impugnación del *Informe Social Forense,* así como que acogió las recomendaciones de la Trabajadora Social Karim Rosado Raíces (en adelante, Trabajadora Social) esbozadas en el mismo.

Por los fundamentos que expondremos a continuación, *se revoca* la *Sentencia* apelada.

**I**

El 17 de septiembre de 2024 la apelada, Astrid Marie Figueroa Santiago (en adelante, apelada), presentó una *Demanda,* en contra del apelante, sobre la pensión alimentaria y custodia de su hija menor de edad.[1] Tras varios incidentes procesales impertinentes pormenorizar, el 29 de octubre de 2024, el Foro Primario refirió el

---

[1] SUMAC del Tribunal de Primera Instancia, Entrada Núm. 1.

caso de epígrafe a la *Unidad Social de Relaciones de Familia y Asuntos de Menores* para la preparación de un *Informe Social Forense* (en adelante, Informe Social).[2]

Posteriormente, el 9 de junio de 2025, la Trabajadora Social presentó, ante el Foro *a quo*, el referido Informe.[3] Al día siguiente, el apelante presentó una *Moción en Solicitud de que se Autorice Acceso al Informe Social,* mediante la cual indicó que los documentos fueron presentados de forma confidencial, y necesitaba autorización para accederlos.[4] En consecuencia, el 13 de junio de 2025, el Foro Primario emitió una *Resolución y Orden,* en la cual autorizó el acceso a los mismos, y ordenó a las partes fijar su posición sobre el *Informe Social* en un término de veinte (20) días, so pena de acoger las recomendaciones esbozadas por la Trabajadora Social.[5]

Así las cosas, el 1 de julio de 2025, el apelante presentó una *Moción Anunciando Impugnación del Informe Social y Solicitando Acceso a Informes Psicológicos.*[6] En su escrito, sostuvo que el *Informe Social* contenía diversas omisiones, así como percepciones y conclusiones que proyectaban una imagen adversa de su persona. A su juicio, tales deficiencias podrían incidir en la evaluación que realizaría el Foro de Instancia respecto al mejor bienestar de la menor. Asimismo, reiteró que ciertos anejos del referido Informe estaban catalogados como confidenciales, lo que le impedía examinarlos. Por último, solicitó que se autorizara a su perito, el Dr. Larry E. Alicea Rodríguez, a tener acceso tanto al *Informe Social* como a sus anejos.

Posteriormente, el 16 de julio de 2025, el Tribunal de Primera Instancia emitió una *Orden de Señalamiento de Vista Mediante Videoconferencia,* en la cual pautó una vista de impugnación del

---

[2] *Íd.*, Entrada Núm. 40.
[3] *Íd.*, Entrada Núm. 87.
[4] Apéndice del recurso, Entrada Núm. 88.
[5] SUMAC del Tribunal de Primera Instancia, Entrada Núm. 90.
[6] Apéndice del recurso, Entrada Núm. 95.

*Informe Social* para el 10 y 11 de septiembre de 2025.[7] Por igual, el Foro Primario ordenó a las partes a presentar, dentro de los treinta (30) días antes de dicha vista, un *Informe Conjunto con Antelación a la Vista de Impugnación de Informe Social* (en adelante, Informe Conjunto).[8]

Luego, el 12 de agosto de 2025, el apelante presentó *Moción Reiterando Solicitud de Remedios Relacionados a Proceso de Impugnación del Informe Social*.[9] En la misma, insistió en que no contaba con acceso a ciertos anejos que acompañaban el referido informe. De igual forma, solicitó que se dejaran sin efecto las vistas señaladas, a fin de que las partes contaran con la oportunidad de presentar los informes periciales correspondientes. Finalmente, peticionó que se reconociera al Dr. Larry Emil Alicea Rodríguez como su perito.

En respuesta, el Foro de Instancia emitió una *Resolución Interlocutoria*, mediante la cual le concedió acceso al expediente judicial al perito del apelante, y ordenó a presentar el informe pericial pertinente en un término de cuarenta y cinco (45) días.[10] Además, el Foro *a quo* transfirió la vista de impugnación para el 22 y 23 de octubre de 2025, al igual que insistió en que las partes debían presentar el *Informe Conjunto*. Igualmente, ordenó que se les diera acceso a las partes a los anejos del *Informe Social* en controversia. En adición, el Tribunal de Primera Instancia hizo constar que el apelante esperó dos (2) meses para advertir sobre la falta de acceso a dichos documentos.

Luego de varios asuntos procesales, el 26 de septiembre de 2025, Tribunal de Primera Instancia ordenó a las partes a presentar el *Informe Conjunto* en un término de cinco (5) días.[11] Ante su

---

[7] SUMAC del Tribunal de Primera Instancia, Entrada Núm. 97.
[8] *Íd.*, Entrada Núm. 98.
[9] Apéndice del recurso, Entrada Núm. 101.
[10] SUMAC del Tribunal de Primera Instancia, Entrada Núm. 102.
[11] *Íd.*, Entrada Núm. 114.

incumplimiento, el 3 de octubre de 2025, el Foro Primario les concedió otro término de cinco (5) días para cumplir con lo ordenado.[12] No obstante, ante el incumplimiento, el 14 de octubre de 2025, el Tribunal de Primera Instancia le impuso una sanción de doscientos dólares ($200.00) a las partes.[13]

Posteriormente, el 16 de octubre de 2025, el apelante presentó una *Moción Urgente Solicitando Traslado/Transferencia de Vista*, mediante la cual arguyó que su perito se encontraba fuera del país y no podría comparecer a las vistas señaladas para el 22 y 23 de octubre de 20205, al igual que su representación legal enfrentaba una situación médica que le impediría asistir.[14] En igual fecha, y mediante *Resolución,* el Foro Primario declaró *No Ha Lugar* la solicitud del apelante, al concluir que este incumplió con las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 1 *et seq.* En consecuencia, dispuso la celebración de la vista sin el testimonio pericial.[15] Además, determinó que la dilación en la presentación del *Informe Conjunto* era atribuible al apelante. Por ello, dejó sin efecto la sanción previamente impuesta a la apelada, y ordenó al apelante a satisfacer la misma. A su vez, concedió a las partes hasta el 20 de octubre de 2025 para la presentación del referido informe.

En desacuerdo, e 17 de octubre de 2025, el apelante presentó una *Moción de Reconsideración Parcial y Aclaración*, en la cual informó que su perito estaría disponible para la vista del 23 de octubre de 2025, y que completaría su informe en o antes del 20 de octubre de 2025.[16] Además, reiteró su petición de traslado de la vista señalada para el 22 de octubre de 2025. De igual forma, solicitó que la sanción se mantuviera respecto a ambas partes.

---

[12] *Íd.*, Entrada Núm. 128.
[13] *Íd.*, Entrada Núm. 138.
[14] *Íd.*, Entrada Núm. 143.
[15] *Íd.*, Entrada Núm. 144.
[16] *Íd.*, Entrada Núm. 145.

En atención a los pliegos radicados, el 20 de octubre de 2025, el Tribunal de Primera Instancia ordenó al apelante a presentar el informe de su perito en o antes de las 3:00pm de ese mismo día.[17] Por igual, le concedió a las partes hasta el 22 de octubre de 2025 para presentar el *Informe Conjunto*. Asimismo, el Foro Primario dejó sin efecto la vista señalada para el 22 de octubre de 2025, mantuvo la pautada para el 23 de octubre de 2025, señalando la continuación de los procedimientos para el 13 de noviembre de 2025.[18] No obstante, en vista de que a las 4:18pm del 20 de octubre de 2025, el apelante no había presentado el informe pericial anunciado, el Foro Primario le impuso una sanción adicional de cien dólares ($100.00).[19] Más tarde ese día, a las 5:18pm, el apelante presentó el informe pericial de su perito.[20]

En atención a ello, el 21 de octubre de 2025, el Foro Primario emitió una *Orden* indicando lo siguiente: "Se tiene por recibido. Se mantienen las sanciones impuestas y la orden para presentar el *Informe Conjunto*".[21] Al día siguiente, las partes presentaron el *Informe Conjunto* solicitado por el Tribunal de Primera Instancia.[22]

Así las cosas, el 23 de octubre de 2025, día pautado para el comienzo de la vista de impugnación, el Foro Primario consideró que el *Informe Conjunto* presentado no cumplió con lo solicitado, por lo que ordenó a las partes a revisar el mismo, así como a estipular la prueba pertinente.[23] En vista de que ese día no comenzó la vista de impugnación, el Tribunal de Primera Instancia, añadió la vista del 14 de noviembre de 2025.

Posteriormente, el 27 de octubre del 2025 el apelante presentó una *Moción Urgente de Transferencia de Vista*, mediante la cual

---

[17] *Íd*., Entrada Núm. 146.
[18] *Íd*., Entrada Núm. 146.
[19] *Íd*., Entrada Núm. 147.
[20] *Íd*., Entrada Núm. 148.
[21] *Íd*., Entrada Núm. 151.
[22] *Íd*., Entrada Núm. 155.
[23] *Íd*., Entrada Núm. 160.

informó que, debido a compromisos previos, su perito no podría comparecer a las vistas señaladas para el 13 y 14 de noviembre de 2025.[24] Por ello, solicitó la transferencia de la vista. No obstante, el Tribunal de Primera Instancia denegó la petición.[25]

En desacuerdo, el 31 de octubre de 2025, el apelante presentó una *Moción de Reconsideración*, mediante la cual alegó que el perjuicio, ocasionado por la transferencia de la vista en cuestión, sería mínimo.[26] Adujo que la ausencia del perito por conflictos de calendario empobrecería el expediente, al igual que colocaría al Foro apelado en una disyuntiva innecesaria. Asimismo, planteó que su petición no alteraba en términos sustantivos el procedimiento, propiciaba la economía procesal y facilitaba la decisión en los méritos del Tribunal.

Sin embargo, luego de evaluada la petición, el 6 de noviembre de 2025, el Foro Primario emitió una *Resolución Interlocutoria*, reiterando su denegatoria al cambio de fecha, así como que resaltó que del expediente surgían los múltiples incumplimientos del apelante con las órdenes del tribunal, por lo que no se podía sostener que su solicitud estaba cimentada en la economía procesal.[27]

Así las cosas, el 12 de noviembre de 2025, día pautado para la vista de la de impugnación del *Informe Social*, el apelante no compareció.[28] Por consiguiente, el Foro de Instancia emitió una *Orden*, mediante la cual desestimó el petitorio del apelante sobre la impugnación del *Informe Social*, y dejó sin efecto los señalamientos para la continuación de los procedimientos a esos efectos.[29] Al día siguiente, el Tribunal de Primera Instancia emitió la *Sentencia*

---

[24] *Íd.*, Entrada Núm. 161.
[25] *Íd.*, Entrada Núm. 164.
[26] *Íd.*, Entrada Núm. 166.
[27] *Íd.*, Entrada Núm. 171.
[28] Apéndice del recurso, Entrada Núm. 175.
[29] SUMAC del Tribunal de Primera Instancia, Entrada Núm. 174.

apelada, en la que acogió las recomendaciones emitidas por la Trabajadora Social en su informe.[30]

En desacuerdo, el 17 de noviembre de 2025, el apelante presentó una *Moción Urgente Solicitando Suspensión de Ejecución de Sentencia y Reconsideración.*[31] En síntesis, el apelante alegó que su incomparecencia se debió a un error de calendario. Sostuvo que la desestimación era una sanción extrema y desproporcionada, pues planteó que había actuado de forma diligente durante el procedimiento. Arguyó que el Foro Primario actuó sin apercibirle de las consecuencias de no comparecer a la vista, ni concederle la oportunidad al apelante para explicar su incumplimiento, al igual que sin ponderar la posibilidad de sanciones menos severas. No obstante, el 12 de febrero de 2025, el Tribunal de Primera Instancia denegó su petición.[32]

Inconforme, el 7 de enero de 2026, el apelante presentó el recurso de epígrafe. En el mismo, señaló la comisión de los siguientes errores:

> Erró el Tribunal al basar la desestimación en una premisa fáctica incorrecta sobre una supuesta "espera de dos meses", imputándole inactividad procesal inexistente y utilizando esa premisa como fundamento para una sanción extrema.
>
> Abusó de su discreción al imponer la sanción extrema por una confusión razonable de calendario y una incomparecencia aislada, sin constatar contumacia ni ponderar alternativas menos severas.
>
> Erró al imputar al Apelante fallas institucionales relativas al acceso a evaluaciones psicológicas y al peritaje, violentando el debido proceso probatorio.
>
> Erró al resolver una controversia de relaciones paterno-filiales mediante sanción extrema sin adjudicar en los méritos, en contravención al interés superior de la menor.
>
> Erró al imponer una sanción desproporcionada bajo la Regla 39.2 en ausencia total de contumacia, pese a que el récord demuestra diligencia, comparecencias y cumplimiento de órdenes y sanciones económicas.

---

[30] Apéndice del recurso, Entrada Núm. 177.
[31] *Íd.*, Entrada Núm. 179.
[32] *Íd.*, Entrada Núm. 194.

Por su parte, el 6 de febrero de 2026, la apelada presentó su *Alegato en Oposición*. Así, perfeccionado el recurso y con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II**

Sabido es que nuestro estado de derecho reconoce e impulsa el interés de que todo litigante tenga su día en corte. *Rivera et al. v. Superior Pkg., Inc. et al.,* 132 DPR 115, 124 (1992). El empleo de los recursos adjudicativos en nuestra jurisdicción se fundamenta en la política judicial que establece que los casos se ventilen en sus méritos de forma rápida, justa y económica. *Amaro González v. First Fed. Savs.,* 132 DPR 1042, 1052 (1993); Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R. 1. Por tanto, la posición doctrinaria en nuestro sistema de ley es salvaguardar, como norma general, el derecho de las partes a su efectivo acceso a los tribunales. *Imp. Vilca, Inc. v. Hogares Crea, Inc.,* 118 DPR 679, 686-687 (1987).

Ahora bien, "[l]a desestimación de una reclamación es un pronunciamiento judicial que, cuando se entiende como una resolución del caso en los méritos, ha sido caracterizada como 'la sanción máxima, la pena de muerte procesal, contra la parte'." *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 264 (2021), citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 250. En reconocimiento a dicha premisa, el estado de derecho vigente dispone que la desestimación de un pleito constituye una sanción de último recurso, por lo que la facultad judicial para decretarla debe ejercerse de manera juiciosa y apropiada. *Íd.*; *Sánchez Rodríguez v. Adm. de Corrección,* 177 DPR 714, 721 (2009); *Maldonado v. Srio. De Recursos Naturales,* 113 DPR 494, 498 (1982). Al respecto, el entendido doctrinal vigente dispone que la mesura esperada en el ejercicio adjudicativo pertinente responde a la política

judicial de que los casos se ventilen en sus méritos para cumplir con el interés que vela porque todo litigante tenga su día en corte. *VS PR, LLC v. Drift-Wind,* supra, pág. 264; *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 298 (2012); *Mun. de Arecibo v. Almac. Yakima,* 154 DPR 217, 221 (2001).

La Regla 39.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2, "contempla la figura de la desestimación en distintas modalidades". *VS PR, LLC v. Drift-Wind,* supra, pág. 265. En lo atinente, en su inciso (a), provee para la desestimación de una demanda, ello en ocasión a que la parte promovente incumpla con lo estatuido en el ordenamiento procesal, o con cualquier orden emitida por el tribunal competente. Su finalidad primordial es acelerar los trámites judiciales. Sin embargo, la disposición en cuestión limita el alcance de la determinación judicial en cuanto a dicho curso de acción. A tales efectos, dispone como sigue:

> (a) Si la parte demandante deja de cumplir con estas reglas o con cualquier orden del tribunal, el tribunal a iniciativa propia o a solicitud de la parte demandada podrá decretar la desestimación del pleito o de cualquier reclamación contra ésta o la eliminación de las alegaciones, según corresponda. Cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan sólo procederá después que el tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado o abogada de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que puede tener el que la misma no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término.

> […].

> 32 LPRA Ap. V, R. 39.2 (a).

De la citada disposición surge que una vez se plantea ante el Tribunal de Primera Instancia una situación que amerite la imposición de sanciones, el foro deberá primeramente sancionar al abogado de la parte. Si la acción disciplinaria no produce frutos positivos, **procederá la desestimación de la demanda o la eliminación de las alegaciones, siempre y cuando la parte haya sido debidamente informada y apercibida de las consecuencias que puede acarrear el incumplimiento.** *Mun. de Arecibo v. Almac. Yakima,* supra, pág. 223; *Dávila v. Hosp. San Miguel, Inc.*, 117 DPR 807, 814-815 (1986). (Énfasis nuestro).

De cometer otro incumplimiento luego de la advertencia y a la imposición de sanciones económicas, el foro de instancia podrá decretar la desestimación del caso. Lo anterior le concede a la parte oportunidad de tomar las medidas necesarias para proteger la defensa de sus derechos, previo a desestimar la reclamación.

**III**

En apretada síntesis, el apelante alegó que el Tribunal de Primera Instancia incidió al desestimar su petitorio de impugnación del *Informe Social*, sin haberle apercibido que su incomparecencia a la vista previamente señalada tendría dicho resultado. Asimismo, planteó que el Foro de Instancia debió imponer sanciones menos severas, previo a desestimar su solicitud, así como de acoger las recomendaciones de la Trabajadora Social. Por consiguiente, sostuvo que la actuación del Foro apelado constituyó un abuso de su discreción. Tras examinar el expediente conforme al derecho aplicable, nos vemos forzados a diferir de la decisión del Tribunal sentenciador de desestimar la petición instada por el apelante, ya que no se apercibió de las consecuencias que tendría su incomparecencia al procedimiento, ni se le notificó a la parte sobre la situación.

Tal cual esbozamos, la Regla 39.2 (a), *supra*, le provee autoridad al tribunal para desestimar una demanda, así como de eliminar alegaciones, si la parte promovente incumple con cualquier orden emitida por este. No obstante, es obligación del aludido foro cumplir con el proceso que exige la referida Regla previo a dicho curso de acción. El aludido estatuto dispone que, previo a tomar este tipo de medida, el foro de instancia debe apercibir a la parte de las consecuencias que acarrea su incumplimiento, y notificar directamente a la parte sobre la situación.

En el caso de autos, no surge que se le haya advertido a la representación legal o a la parte que su incomparecencia a la vista de impugnación del *Informe Social*, así como su incumplimiento con las órdenes del Tribunal, resultaría en la desestimación de su reclamo. De igual forma, tampoco emana de los documentos que obran en autos que se le haya notificado directamente a la parte sobre los incumplimientos y sus posibles consecuencias, previo a la desestimación en cuestión.

Siendo así, concluimos que la actuación del Tribunal de Primera Instancia fue inadecuada por omitir los pasos antes detallados, previo a desestimar la petición de impugnación del referido informe promulgada por el apelante.

No obstante, no podemos pasar por alto que del expediente ante nuestra consideración surge el reiterado incumplimiento del apelante con múltiples órdenes emitidas por el Foro de Instancia. En consecuencia, y en vías de incentivar el respeto que merece el Foro apelado, imponemos una sanción de dos mil dólares ($2,000.00) al apelante, la cual deberá satisfacer ante el Foro Primario dentro de un término de quince (15) días. Advertimos al apelante que tiene un deber de tramitar la causa de acción que interesa de manera diligente, implicando ello, a su vez, la debida observancia a los mandatos del tribunal. De incumplir nuevamente

con las órdenes del Tribunal de Primera Instancia, perderá su oportunidad de impugnar el *Informe Social* en controversia.

**IV**

Por los fundamentos antes esbozados, *revocamos* la *Sentencia* apelada.

Igualmente, le imponemos una sanción económica al apelante, ascendente a dos mil dólares ($2,000.00), esto por falta de respeto al Tribunal al incumplir reiteradamente con sus órdenes. Tendrá el apelante quince (15) días para satisfacer la misma, a partir de la notificación de nuestro dictamen.

Se ordena a la secretaria de este Tribunal la notificación de la presente *Sentencia* directamente al apelante, Alex David Olmedo Lizardi.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones